772 P.2d 1222

**Wayne D. HUDSON, Plaintiff,**

v.

**Lyle R. COBBS, Individually; and Jack Kennevick, Individually; and Cobbs/Kennevick, a General Partnership, Defendants–Respondents,**

and

**Brian Smith, Defendant–Appellant,**

Larry Sundell, Mark Bazeghi, Kathy Bazeghi, aka Kathy Hampson and Doug Sherwood, all Individually; and Webster Investments # 3, an Idaho General Partnership, Defendants.

**Larry SUNDELL, Defendant–Cross Claimant,**

v.

**Abbass BAZEGHI, Mark Bazeghi, and Kathy Bazeghi a/k/a Kathy Hampson, Cross–Defendants.**

**Brian SMITH, Defendant–Cross Claimant–Appellant,**

v.

**Mark BAZEGHI and Kathy Bazeghi, a/k/a Kathy Hampson, Cross–Defendants.**

**Lyle R. COBBS, Jack Kennevick, and Cobbs/Kennevick, a General Partnership, Defendants–Counter Claimants–Cross–Claimants Respondents,**

v.

**Wayne D. HUDSON, Counter Defendant,**

and

**Brian Smith, Cross Defendant Appellant,**

and

Abbass Bazeghi, Larry Sundell, Mark Bazeghi, Kathy Bazeghi and Doug Sherwood, all Individuals; and Webster Investments # 3, an Idaho General Partnership, Cross–Defendants.

Nos. 16784, 16791.

Supreme Court of Idaho.

April 10, 1989.

Eberle, Berlin, Kading, Turnbow & Gillespie, Boise, for appellant. Scott D. Hess argues.

Elam, Burke & Boyd, Boise, for the respondent. Todd J. Wilcox argued.

HUNTLEY, Justice.

The issue presented is whether Smith and Sundell are entitled to indemnification from Cobbs and Kennevick and the Cobbs/Kennevick Partnership for their liability to Wayne Hudson for damages on rescission of a land sale contract.

## FACTS

This appeal arises out of cross claims brought by Brian Smith and Larry Sundell (partners in the Webster # 3 Partnership) against Lyle Cobbs and Jack Kennevick and the Cobbs/Kennevick Partnership. The parties had been defendants in a suit by Wayne Hudson against the Webster # 3 Partnership and Cobbs and Kennevick and the Cobbs/Kennevick Partnership in which Hudson proceeded on three basic causes of action:

1. Common law fraud against Cobbs, Kennevick and Mark Bazeghi.

2. Negligence against the defendants Cobbs and Kennevick and the Cobbs/Kennevick partnership.

3. Rescission against Webster Investments # 3 and its individual partners based on a material breach of its obligation to meet the pre-leasing requirements for long-term financing and its obligation to guarantee lease payments pursuant to an agreement entered on June 24, 1981.

Smith and Sundell cross-claimed against Cobbs and Kennevick and the Cobbs/Kennevick Partnership for indemnification contribution and/or subrogation for their liability as general partners in Webster # 3 in Hudson's rescission action.

Hudson's rescission action arose out of a land sale contract in which Webster # 3 was to sell Hudson a tract of land called "Wildwood." On August 1, 1980, Webster # 3 had obtained a $500,000 loan from Idaho First to finance construction of office buildings on the Wildwood property. Under the terms of the loan agreement, the loan was convertible to long-term financing if the office building was preleased to the extent of 12,210 feet prior to July 1, 1981. As a precondition to Hudson's purchase, Webster # 3 was required to prelease 12,-210 feet of office spaces on the Wildwood property so that Idaho First would convert the loan to long-term financing for its benefit.

On March 17, 1981, in an effort to fulfill Webster # 3's pre-lease requirements, Ab-

bass Bazeghi (Webster #3's managing partner) procured lease agreements from the Cobbs/Kennevick Partnership for suites of offices. The agreement was that Cobbs/Kennevick would sign straw leases so that the Bank would approve the financing because it would appear that the pre-leasing requirements had been met. Contemporaneous to execution of the leases, Bazeghi and the Cobbs/Kennevick Partnership entered a "hold harmless" agreement, whereby Bazeghi agreed to pay the rent on Cobbs and Kennevick's spaces by July 1, 1981. This provision was designed to "save" Cobbs and Kennevick harmless from any payments and other economic detriments that could arise from their execution of the lease.

Seven months after the jury rendered its verdict on the fraud and negligent misrepresentation actions, the trial court issued a Memorandum Decision pursuant to I.R.C.P. 52(a) and an order granting judgment n.o.v. The court ruled that the partners in Webster #3, including Smith and Sundell, were joint and severally liable to Hudson for the damages awarded him on the rescission cause of action, the order of the court reading in part:

> 1. That the plaintiff shall recover from the Defendants, Webster Investments #3, a partnership, and from the partners therein, Mark Bazeghi, Kathy Bazeghi, Brian Smith, Larry Sundell, Doug Sherwood and Abbass Bazeghi, jointly and severally, the sum of $290,162.70 plus interest accrued thereon to the date of this judgment in the amount of $202,-186.21, making a total due under this paragraph of this judgment in the amount of $492,348.91, which sum shall bear interest from the date of this judgment until paid at the rate from time to time provided by law; and that this paragraph of this judgment shall not be construed to impose personal liability on the Defendants Mark Bazeghi and Kathy Bazeghi, but this judgment shall operate as a judgment in rem as to all money attached pursuant to the attachment proceedings in this action in the approximate

sum of $6,152.31 and held by First American Title Company of Idaho pursuant to the stipulation dated December 23, 1982, and a writ of execution shall issue on this judgment for the levy upon and application of such money attached in this action toward payment of this judgment.

On December 9, 1986, the court issued a decision and order holding that Smith and Sundell had shown no basis in their cross claims for indemnification:

> The cross-claimants have shown no basis for an indemnification claim. The cross-claimants have not discharged any liability of the defendants Cobbs and Kennevick under the leases signed by them. There was no express contract for indemnification which would give the Webster #3 defendants a contractual right of indemnification from Cobbs and Kennevick. Even assuming an implied right of indemnification, the defendants have not discharged a duty which should have been discharged by the defendants Cobbs and Kennevick. *See*, Restatement of Restitution § 76. No amount of the damages awarded in this case against the Webster #3 defendants includes a sum representing lease payments on the suites leased by the defendants Cobbs and Kennevick. No benefit has been shown to have been conferred on the defendants Cobbs and Kennevick by the Webster #3 defendants nor would there be any even if the Webster #3 defendants were to pay the judgment against them.

### I.

We hold that Smith and Sundell are not entitled to indemnification, that as general partners in Webster #3 they were primarily liable for the breach of contract and, further, that Cobbs' and Kennevick's potential contractual liability can extend no further than liability on their specific leases.

The primary problem in determining whether Smith and Sundell are entitled to indemnification from Cobbs and Kennevick

is delineating the two party's respective roles and obligations in the Wildwood sales contract. Smith and Sundell claim that the facts establish that the judgment entered against Webster #3 was for damages based upon the breach of the guaranty agreement dated June 24, 1981. They claim that they were found liable as guarantors of the Wildwood leases, and specifically the Cobbs and Kennevick leases. In essence, the question we must resolved is: who was primarily liable for the breach of the Wildwood sales contract; or alternatively, was a guarantee/guarantor relationship created between Webster #3 and Cobbs and Kennevick?

Guarantors are secondarily liable in contracts. One cannot be both primarily and secondarily liable on the same contract or contract provision; it is an either/or proposition.

■ "Guaranty" is an undertaking or promise on the part of a guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of nonperformance of the principal obligor. *Industrial Inv. Corp. v. Rocca*, 100 Idaho 228, 596 P.2d 100, appeal after remand, 102 Idaho 920, 643 P.2d 1090 (1979).

Black's Dictionary defines a guarantee as:

A collateral agreement for performance of another's undertaking. An undertaking or promise that is *collateral to primary or principal obligation* and that binds guarantor to performance in the event of nonperformance by principal obligor. (Emphasis added.)

A promised answer for payment of debt or performance of obligation *if person liable in first instance* fails to make payment or perform obligation. An undertaking by one person to be answerable for the payment of some debt, or the due performance of some contract or duty, by another person, who himself remains liable to pay or perform the same. A promised answer for the debt,

default, or miscarriage of another person.

The law of guaranty is also discussed in 38 Am.Jur.2d § 1, pp. 95–1000.

The doctrines of mutual assent, consideration, and conditions are applicable to the formation of enforceable guaranties. p. 996, *supra.*

**§ 2 Collateral Character of Guaranty Contract.** The contract of guaranty is an enforceable undertaking or promise on the part of one person which is collateral to a primary or principal obligation on the part of another, and which binds the obligor to performance in the event of nonperformance by such other, the latter being bound to perform primarily. "Guaranty" is defined as "a promise to answer for the debt, default, or miscarriage of another person." (Quoting *Robey et al. v. Walton Lumber Co.*, [17 Wash.2d 242,] 135 P.2d 95 (Wash.1943). In other words, the guarantor is responsible as security for the debt or obligation of another person. Under a statute which refers to persons who are "primarily" liable for the payment of an obligation, and those who are "secondarily" liable therefor, it is held that the contract of guaranty creates a secondary liability.

**§ 3 Primary Liability is Precluding Guaranty.** The distinguishing feature of a guaranty is that the obligation is collateral to another contractual duty to perform. Thus, the if the obligation sought to be enforced is a primary or unconditional promise so that the promissor is primarily liable regardless of the failure of some other party to perform his contractual duty, the conclusion is that the obligation is not a contract of guaranty. The obligor may be bound as a surety, or his undertaking may be original and independent. The circumstance that the debtor obligation of another person is to be paid or performed by the promissor does not of itself require a conclusion that the contract is one of guaranty. *So, an agreement to pay a certain sum for and on account of a third person, un-*

*less such third person is primarily bound to pay the debt, is not a collateral agreement in the nature of a guaranty, but is an original undertaking.* (Emphasis added.)

█ Webster #3 was the guarantor of the Cobbs and Kennevick and Cobbs/Kennevick Partnership's lease contracts. However, this is a point separate and apart from the question raised by the issue on appeal; that question being who was primarily liable for the rescinded land sale contract between Webster #3 and Hudson. The land sale contract was the contract that was rescinded; it was the contract that Hudson received restitutionary damages for; it was the contract Webster #3 was held liable for; it was the contract that Webster #3 is seeking indemnification for. The law and relevant facts clearly demonstrate that Webster #3 was primarily liable on the rescinded land sale contract. One cannot be a guarantor and, thus, secondarily liable for one's own contract. Thus, the trial court was correct when it stated that Smith and Sundell have shown no basis for an indemnification claim because they did not discharge any liability of Cobbs and Kennevick under the leases signed by them. There was no express contract for indemnification, Smith and Sundell did not discharge a duty which should have been discharged by Cobbs and Kennevick, i.e., no amount of the damages awarded in this case against Webster #3 includes a sum representing lease payments on the suites leased by the defendants Cobbs and Kennevick.

The trial court used incorrect terminology when it stated that Webster #3 was liable for rescission because it breached *its obligation to guarantee* the rent payments. Webster #3 was liable for rescission, but not because it breached its obligation to guarantee the rent payments. Webster #3 was liable because it breached its primary duty to fulfill its contract obligations to Hudson in the Wildwood sale contract. The question of whether Webster #3 breached its obligation to guaran-

tee the rent payments was not raised during the trial and is irrelevant to this appeal.

This error in terminology is unfortunate but harmless. The trial court's findings of fact and conclusions of law clearly illustrate that the rescinded contract, the one Smith and Sundell are seeking indemnification for, was the land sale contract. Smith and Sundell, as general partners in Webster #3, are primarily liable for breach of this contract and are not entitled to indemnification.

Decision of the trial court affirmed. Costs to respondents.

SHEPARD, C.J., BAKES and JOHNSON, JJ. and McFADDEN, J. pro tem, concur.