# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 38634-2011

MICKELSEN CONSTRUCTION, INC., )
)
      Plaintiff-Appellant, )
)
v. )
)
LESA DARLENE HORROCKS and )
SUNSHINE SECRETARIAL SERVICES, )
INC., )
)
      Defendants-Respondents. )
)

Boise, June 2012 Term

2013 Opinion No. 37

Filed: March 29, 2013

Stephen W. Kenyon, Clerk

Appeal from the District Court of the Sixth Judicial District of the State of Idaho, in and for Bannock County. The Hon. Stephen S. Dunn, District Judge.

The judgment of the district court is <u>affirmed</u>.

Gary L. Cooper, Cooper & Larsen, Pocatello, argued for appellant.

Aaron Thompson, May, Rammell & Thompson, Chtd.; Pocatello; argued for respondents.

_____

EISMANN, Justice.

This is an appeal out of Bannock County from a summary judgment dismissing an action to enforce an oral agreement to guaranty the debt of another on the ground that the agreement is barred by the statute of frauds. We affirm the judgment of the district court.

## I.
## Factual Background.

In January 2009, Lesa Darlene Horrocks was one of the owners of Sunshine Secretarial Services, Inc., which was in the business of providing contract secretarial services, professional office space rental with in-house services, accounting, and management services. It subleased a

common office space to Accelerated Paving, Inc., and, at times, provided it with secretarial and other services, such as copying and cleaning.

Accelerated Paving owed Mickelsen Construction, Inc., the sum of $34,980.00 for providing asphalt to an Accelerated Paving jobsite. Mickelsen Construction threatened to file a materialmen's lien against the real property on which the work was being done, and Accelerated Paving's vice president asked that it not do so because that would delay the receipt of payment for the construction job. The vice president offered to pay the debt with an American Express credit card, but Delwyn Mickelsen, the president of Mickelsen Construction, responded that it did not accept American Express credit cards. There is disagreement as to what happened next.

Mr. Mickelsen testified that Accelerated Paving's vice president said there was not enough credit on the card to fund the payment, but when Accelerated Paving received payment for the project it would pay down the balance so that there was enough credit to pay Mickelsen Construction with the credit card. Mickelsen Construction agreed not to file the lien if Accelerated Paving could find someone to guaranty the payment by the credit card. Ms. Horrocks agreed to do so and gave Mr. Mickelsen a check dated January 8, 2009, in the amount of $34,980.00 drawn on the account of Sunshine Secretarial Services and payable to Mickelsen Construction. Mr. Mickelsen told the general manager of Accelerated Paving that a bank in a nearby town had agreed to facilitate the transaction with the American Express card, and once funds were received from American Express the check would be returned to Ms. Horrocks. Accelerated Paving did not go to the bank to pay the debt with its credit card, and after not receiving payment Mickelsen Construction attempted twice to negotiate the check, but there were insufficient funds in Sunshine Secretarial's bank account.

Ms. Horrocks testified that she was asked by Accelerated Paving's vice president and general manager if she would facilitate a credit card payment to Mickelsen Construction. Sunshine Secretarial had a credit card machine that was capable of transacting with several credit cards including American Express credit cards. They told her that American Express had approved the transaction and asked her to use Sunshine Secretarial's credit card machine to run a $34,980.00 transaction and write a check to Mickelsen Construction for the same amount, with the understanding that American Express would pay Sunshine Secretarial that sum in the normal course of business. She ran the credit card through Sunshine Secretarial's credit card machine, and it appeared to her that the transaction had been approved by American Express. She then

issued the check. Several days later, Accelerated Paving informed her that American Express had not approved the transaction. She never informed anyone that Sunshine Secretarial would accept Accelerated Paving's debt to Mickelsen Construction. The testimony of Accelerated Paving's vice president and general manager essentially agreed with that of Ms. Horrocks.

Accelerated Paving had filed bankruptcy. On June 30, 2010, Mickelsen Construction filed this action against Ms. Horrocks and Sunshine Secretarial alleging that they had agreed to guaranty the credit card payment and so issued the check. The Defendants filed a motion for summary judgment, arguing that the alleged guaranty was barred by the statute of limitations in Idaho Code section 9-505. In response, Mickelsen Construction argued that the check was a sufficient writing under the statute of frauds and, if not, that the transaction was governed by Idaho Code section 9-506 and therefore exempt from the statute of frauds. The district court held that the check was an insufficient writing and that section 9-506 did not apply because the Defendants did not receive any direct benefit as required by *Reed v. Samuels*, 43 Idaho 55, 249 P. 893 (1926). The court granted the motion for summary judgment and entered a judgment dismissing this action. Mickelsen Construction then timely appealed.

## II.
### Did the District Court Err in Granting the Defendants' Motion for Summary Judgment?

In order to decide whether the district court erred in granting the Defendants' motion for summary judgment, it is first necessary to identify the cause of action alleged by Mickelsen Construction.

**1. The only claim alleged in the complaint was that Ms. Horrocks agreed to guaranty the debt of Accelerated Paving.**

The only claim alleged by Mickelsen Construction in its complaint was that Ms. Horrocks[1] agreed to guaranty Accelerated's debt. After identifying the parties, the complaint alleged as follows:

IV.
Mickelsen Construction, Inc. threatened to file a material lien against a project in which Accelerated Paving, Inc. was involved.

---

[1] In the complaint, Mickelsen Construction alleged that "Defendant Lesa D. Horrocks agreed to guarantee the credit card payment of Alan Smith and Accelerated Paving, Inc." There is no allegation that she did so as an agent of Sunshine Secretarial Services, Inc., or that it agreed to guaranty the check.

V.

Alan Smith of Accelerated Paving, Inc. came to Delwyn Mickelsen and requested that Mickelsen Construction, Inc. not file the lien because that would prevent Accelerated Paving, Inc. from getting paid on the project. Alan Smith offered to pay by credit card but explained that he would have to use the project payment to pay the balance on his credit card before he could obtain the credit necessary to fund the credit card payment.

VI.

Mickelsen Construction, Inc. agreed not to file the lien on the condition that Alan Smith and Accelerated Paving, Inc. obtain someone *to guarantee the payment by credit card* which was offered by Alan Smith and Accelerated Paving, Inc..

VII.

*Defendant Lesa D. Horrocks agreed to guarantee the credit card payment* of Alan Smith and Accelerated Paving, Inc. and to do so wrote a check on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks in the amount of $34,980.00 on January 8, 2009. A copy of said check is attached hereto as Exhibit "A".

VIII.

The check written by Lisa [sic] D. Horrocks on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks bounced and despite numerous demands the checking account on which the check was written never had sufficient funds for the check. Copies of letters from Idaho Central Credit Union dated January 26, 2009 and January 27, 2009 are attached hereto as Exhibit "B".

IX.

That the sum owed is a liquidated sum and plaintiff is entitled to interest at the rate of 12% per annum from and after January 8, 2009, and until a Judgment is entered in this matter.

(Emphases added.)

Throughout the complaint, Mickelsen Construction alleges that it wanted someone to guaranty Accelerated's credit card payment and Ms. Horrocks agreed to do so. There is no allegation that she entered into any transaction other than as a guarantor. Even on appeal, it alleges that Ms. Horrocks agreed to guaranty that debt. In stating the facts in its initial brief, Mickelsen Construction wrote:

Mickelsen Construction agreed not to file the lien on the condition that Smith and Accelerated *obtain someone to guarantee the payment by credit card* which was offered by Smith and Accelerated. (R., p. 48)

4

Defendant Horrocks leased space, provided secretarial services and provided other in-house services to Accelerated. (R., pp. 22, 23) *Horrocks agreed to guarantee the credit card payment* of Smith and Accelerated and to do so wrote a Check on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks in the amount of $34,980.00 on January 8, 20091 (the "Check"). (R., pp. 23, 28, 48)

Appellant's Brief at 2 (emphases added)(footnote omitted).

Mickelsen also stated in its opening brief: "Mickelsen, on the other hand, states definitely in his Affidavit that *he requested somebody guarantee the payment by credit card* and Horrocks *agreed to guarantee* the credit card payment. . . . *Mickelsen understood the Check was to guarantee the transaction.*" *Id.* at n.1 (emphases added).[2]

**2. The alleged agreement by Ms. Horrocks to guaranty Accelerated's debt is within the statute of frauds.** The statute of frauds set forth in Idaho Code section 9-505(2) provides as follows:

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, therefore, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . . .

2. A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in section 9-506, Idaho Code.

A guaranty is within the above-quoted statute of frauds. *Magee v. Winn*, 52 Idaho 553, 16 P.2d 1062 (1932); *Storer v. Heitfeld*, 19 Idaho 170, 113 P. 80 (1910). In *Magee*, a physician sued the sister of one of his patients contending that the sister was liable for the services he

---

[2] In his affidavit, Mr. Mickelsen stated as follows:

4. Mickelsen Construction, Inc. agreed not to file the lien on the condition that Alan Smith and Accelerated Paving, Inc. obtain *someone to guarantee the payment* by credit card which was offered by Alan Smith and Accelerated Paving, Inc..

5. Defendant Lesa D. Horrocks *agreed to guarantee the credit card payment* of Alan Smith and Accelerated Paying, Inc. and to do so wrote a check on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks in the amount of $34,980.00 on January 8, 2009.

. . . .

12. Lesa D. Horrocks was present when Brent L. Grigg informed her that the American Express credit card would be ran through the Bank of Commerce, that *I was requesting a check to guarantee the funds* in the event the funds did not go through and that once the funds were deposited in my account the check would be returned to Lesa D. Horrocks.

(Emphases added.)

provided to the patient. 52 Idaho at 554-55, 16 P.2d at 1062. The sister contended that she was a guarantor and that the claim against her was barred by the statute of frauds. The jury returned a verdict in her favor, and the physician appealed. We vacated the judgment because the sister had not pled the statute of frauds as a defense. *Id.* at 556, 16 P.2d at 1062-63.[3] The physician also argued that the district court erred in instructing the jury that if the physician still held the patient liable for the bill, the sister's promise to pay would be collateral and unenforceable if it was not in writing. We held that the instruction was correct, stating:

> While it is not necessary to a determination of the instant case, inasmuch as the same question might arise upon a second trial, we desire to announce there is no merit in appellant's objection to instruction No. II, wherein the court advised the jury in substance that plaintiff could recover only upon defendant's express promise to pay, and that, *if plaintiff held defendant's sister still responsible to him, the promise of the defendant would be collateral and unenforceable, if not in writing*.

*Id.* at 558, 16 P.2d at 1063 (emphasis added). In *Storer*, the plaintiff contended that he had paid a sum of money to a third party at the request of the defendants and that they had agreed to pay such sum within ten days. 19 Idaho at 172, 113 P. at 80. The defendants contended that if they made any promise or agreement, they were at most guarantors and the action was barred by the statute of frauds. *Id.* at 173, 113 P. at 81. "The case was tried upon the theory that the defendants were not liable; that if any promise were made by the defendants, such promise was collateral and must be in writing." *Id.* at 174, 113 P. at 81. The trial court refused to instruct the jury regarding that defense, the jury found in favor of the plaintiff, and the defendants appealed. We held that the trial court erred in failing to instruct the jury that if credit was given to a third party and that party was in any degree liable for the indebtedness, "the defendants could not be charged as original contractors, but at most *as mere guarantors and under the provisions of section 6009, Rev. Codes, they were not liable unless such agreement or note or memorandum thereof was in writing and subscribed by the party charged or by his agent*."[4] *Id.* at 175, 113 P. at 81 (emphasis added).

---

[3] After this Court adopted the Federal Rules of Civil Procedure, we held that the statute of frauds could be raised as a defense to a motion for summary judgment even though it had not been pled. *Bluestone v. Mathewson*, 103 Idaho 453, 455, 649 P.2d 1209, 1211 (1982).

[4] Revised Code section 6009 was the prior codification of Idaho Code section 9-505, and it provided insofar as is relevant:

6

The alleged agreement by Ms. Horrocks to guaranty the debt of Accelerated Paving is within the statute of frauds set forth in Idaho Code section 9-505(2).

**3.     The alleged guaranty agreement is invalid because there is not a sufficient writing signed by Ms. Horrocks.**     An alleged agreement to guaranty the debt of another "is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent." I.C. § 9-505. "Failure to comply with the statute of frauds renders an oral agreement unenforceable both in an action at law for damages and in a suit in equity for specific performance." 72 Am. Jur. 2d Statute of Frauds, § 285 (1974), 73 Am. Jur. 2d Statute of Frauds § 513 (1974). Even if there were sufficient facts to prove the oral agreement and it was proved, it is unenforceable if there is not a sufficient writing to comply with the statute of frauds. *Hoffman v. S V Co., Inc.*, 102 Idaho 187, 189, 628 P.2d 218, 220 (1981). "In order to render an oral contract falling within the scope of the statute of frauds enforceable by action, the memorandum thereof must state the contract with such certainty that its essentials can be known from the memorandum itself, or by a reference contained in it to some other writing, without recourse to parol proof to supply them." *Blumauer-Frank Drug Co. v. Young*, 30 Idaho 501, 505, 167 P. 21, 21 (1917). "The memorandum which evidences the verbal agreement must contain all the terms of that agreement. Otherwise, it cannot be enforced at law or in equity." *Hoffman*, 102 Idaho at 191, 628 P.2d at 222.

In this case, the only document that could constitute a note or memorandum signed by Ms. Horrocks was the check. The only writing on the check, other than the date, the payee, the amount, and Ms. Horrocks's signature, was "Accel." written on the memo line, which began with the word "For." That would indicate that the check was "For Accel," but nothing more. A " '[g]uaranty' is an undertaking or promise on the part of a guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of

---

In the following cases the agreement is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged, or by his agent. Evidence, thereof, of the agreement cannot be received without the writing or secondary evidence of its contents:

. . . .

2. A special promise to answer for the debt, default or miscarriage of another, except in the cases provided for in the next section;

Idaho Rev. Codes § 6009 (1908). The "next section" was section 6010, which is the prior codification of Idaho Code section 9-506. Idaho Rev. Codes § 6010 (1908).

nonperformance of the principal obligor." *Hudson v. Cobbs*, 115 Idaho 1128, 1131, 772 P.2d 1222, 1225 (1989). The check does not show any intent by either of the Defendants to be liable for the obligation of some other person or entity, it does not name or identify the person or entity that is primarily liable, and it does not specify what obligation of that person or entity is allegedly being guaranteed. There is nothing on the check indicating that either Ms. Horrocks or Sunshine Secretarial agreed to guaranty any obligation of Accelerated Paving to Mickelsen Construction. Therefore, the alleged guaranty agreement is void.

**4. Idaho Code section 9-506(2) is not an issue in this case because it was not pled.** On appeal, Mickelsen Construction argues that its claim against Ms. Horrocks was excepted from the statute of frauds by Idaho Code section 9-506(2).[5] That statute provides that an agreement is excepted from the statute of frauds if

> the creditor parts with value, or enters into an obligation, in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety.

For the statute to apply, there must be an existing debtor-creditor relationship and the creditor must part with value or enter into a binding promise in consideration of a promise made by a third party which, by its terms or under the circumstances, makes the third party the principal debtor and the original debtor the third party's surety. Mickelsen Construction argued that this statute applied because it parted with value by agreeing not to file a materialmen's lien if Accelerated Paving found someone to guaranty the credit card payment. The district court held that section 9-506(2) did not apply because, based upon our decision in *Reed v. Samuels*, 43

---

[5] In the district court, Mickelsen Construction asserted that the alleged agreement was within one of the first three subsections of section 9-506. On appeal, Mickelsen Construction concedes that subsections (1) and (3) could not apply to the facts in this case. It states, "For I.C. 9-505(1) to apply Horrocks/Sunshine Secretarial must have 'received property of another.' While that was certainly contemplated when the transaction was entered into it failed to materialize." Appellant's Brief at 12 n.5 (the reference to 9-505(1) was obviously intended to be 9-506(1)). It is undisputed that Ms. Horrocks did not receive property from Accelerated. Thus, she could not be "one who has received property of another upon an undertaking to apply it pursuant to such promise." With respect to subsection (3), Mickelsen Construction states, "For I.C. 9-505(3) to apply, the obligation of Smith/Accelerated would have had to be cancelled. Again, that was certainly contemplated when the transaction was entered into, but when neither Smith/Accelerated nor Horrocks/Sunshine Secretarial paid as promised, Mickelsen Construction pursued both parties." *Id.* (the reference to 9-505(3) was obviously intended to be 9-506(3)). There are no facts indicating that Mickelsen Construction released Accelerated from its obligation to pay. In fact, the facts are directly to the contrary. All parties agreed that Accelerated was still expected to provide the funds necessary to pay the debt by the use of its American Express credit card. Thus, on appeal Mickelsen Construction only contends that subsection (2) of section 9-506 applies to this transaction.

8

Idaho 55, 249 P. 893 (1926), the Defendants did not receive any direct benefit from the alleged transaction.

In *Reed*, the plaintiffs alleged that they agreed to reduce the principal and waive the interest owing by the debtor in exchange for an oral promise by the defendant to pay such lesser sum. *Id*. at 60-61, 249 P. at 893-94. The trial court dismissed the action on the ground that the complaint failed to allege a claim upon which relief could be granted, and the plaintiffs appealed. On appeal, the Court stated, "Any promise to pay the debt of a third party, whether or not in writing, must be founded upon a consideration in order to be binding." *Id*. at 62, 249 P. at 895. The Court then held that the consideration must flow to the alleged promisor, stating as follows:

> There was no consideration moving to respondent [defendant].
>> The rule is stated in *Curtis v. Brown*, 5 Cush. (Mass.) 488, 491, as follows:
>> "It is no sufficient ground to prevent the operation of the statute of frauds, that the plaintiff has relinquished an advantage, or given up a lien, in consequence of the defendant's promise, if that advantage has not also directly inured to the benefit of the defendant, so as in effect to make it a purchase by the defendant of the plaintiff."

*Id*. The Court then upheld the dismissal of the complaint because it did not allege that any direct benefit inured to the defendant.

The Court in *Reed* erred in two respects. First, the authority relied upon by the Court to hold that there must be a benefit that directly inured to the promisor were not construing a statute, much less one that was similar to Idaho Code section 9-506(2). The legislature has the power to change the common law by creating and defining new causes of action. *Kirkland v. Blaine Cnty. Med. Ctr.*, 134 Idaho 464, 471, 4 P.3d 1115, 1122 (2000); *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 717, 791 P.2d 1285, 1296 (1990); *Everett v. Trunnell*, 105 Idaho 787, 790, 673 P.2d 387, 390 (1983). It did so in enacting Idaho Code section 9-506(2). The wording of the statute does not state that value must go to the promisor. It only requires that the creditor part with value. Had it been the legislature's intent that the value must directly inure to the promisor, it could have so provided, as it did in section 9-506(3) which requires that there be "consideration beneficial to the promisor." Subsection (2) merely states that the creditor must part with value. Second, adequate consideration to support a contract does not have to be a gain by the promisor; it can be a loss by the promisee. As stated by the Idaho Territorial Supreme Court, "It would seem that any gain to the promisor, or loss to the promisee, however trifling, ought to be sufficient consideration to support an express promise." *Vincent v. Larson*, 1 Idaho

9

241, 248 (1869). The *Vincent* Court also quoted with approval from *Violett v. Patton*, 9 U.S. (5 Cranch) 142, 150 (1809) as follows: "To constitute a consideration it is not absolutely necessary that a benefit should accrue to the person making the promise. It is sufficient that something valuable flows from the person to whom it is made; and that the promise is the inducement to the transaction." That understanding of consideration is still the law. *Lettunich v. Key Bank Nat'l Ass'n*, 141 Idaho 362, 368, 109 P.3d 1104, 1110 (2005) ("It [consideration] may also consist of a 'detriment to the promisee or a benefit to the promisor.' "). The *Vincent* opinion was issued before the enactment in 1881 by the territorial legislature of the statute that is now codified as Idaho Code section 9-506(3), and there is no reason to believe that the statute should not be construed as written. Therefore, we overrule *Reed* and its progeny to the extent that they hold that the phrase "the creditor parts with value" requires that the value inure to the benefit of the party making the promise.

Even though we overrule *Reed*, we affirm the judgment of the district court because Mickelsen Construction did not allege a claim under Idaho Code section 9-506(2). An allegation that a party entered into a guaranty agreement does not allege that the party entered into an agreement under section 9-506(2). An allegation of an agreement to guaranty a debt and an allegation of an agreement under section 9-506(2) are mutually exclusive.

Section 9-506(2) provides that an agreement is excepted from the statute of frauds if

the creditor parts with value, or enters into an obligation, in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety.

Thus, to be excepted from the statute of frauds under section 9-506(2), Ms. Horrocks would have had to agree to become "the principal debtor." A person cannot be both the principal debtor and the guarantor. " 'Guaranty' is an undertaking or promise on the part of a guarantor which is collateral to a primary or principal obligation and binds the guarantor to performance in the event of nonperformance of the principal obligor." *Hudson v. Cobbs*, 115 Idaho 1128, 1131, 772 P.2d 1222, 1225 (1989). "Default or non-performance by the principal debtor is required to mature a cause of action in contract against a guarantor." *Gebrueder Heidemann, K.G. v. A.M.R. Corp.*, 107 Idaho 275, 281, 688 P.2d 1180, 1186 (1984). One cannot be both the principal debtor who has defaulted and the guarantor who is secondarily liable in the event of such default. *Hudson*, 115 Idaho at 1132, 772 P.2d at 1226.

As this Court held in *Storer*, an agreement to guaranty a debt and an agreement to be the original promisor were mutually exclusive. The alleged agreement may be one or the other, but it cannot be both. In *Storer*, the plaintiff alleged that he had paid money to a third person at the request of the defendants and that they failed to repay him as agreed. 19 Idaho at 172, 113 P. at 80. The plaintiff contended that the defendants were liable as original promisors pursuant to Idaho Code section 9-506(2).

> This action is evidently brought under the provisions of paragraph 2 of section 6010, Rev. Codes, which section provides, among other things, as follows:
> "A promise to answer for the obligation of another, in any of the following cases, is deemed an original obligation of the promisor, and need not be in writing: . . . . (2) Where the creditor parts with value, or enters into an obligation, in consideration of the obligations in respect to which the promise is made, in terms or under circumstances such as to render the party making the promise the principal debtor, and the person in whose behalf it is made, his surety."

*Id.* at 173, 113 P. at 80-81.

The defendants contended that they were not original promisors under that statute; that, if anything, they were guarantors or sureties; and that the action was therefore barred by the statute of frauds in section 9-505(2).

> Counsel for appellants contend that the facts of this case as shown by the evidence do not bring it within the provisions of said section, but that if any promise or agreement was made between the plaintiff and defendants with reference to the sum of money paid by plaintiff to Buchanan, that the same could not have been other than a collateral undertaking on their part, in which they became merely guarantors or sureties, and therefore the action falls within the statute of frauds as provided by section 6009, Rev. Codes.

*Id.* at 173, 113 P. at 81.

The trial court refused to instruct the jury on the defendants' theory, and the jury returned a verdict in favor of the plaintiff. On appeal, this court vacated the judgment and remanded the case for a new trial because if defendants were guarantors, they would not be liable under section 9-506(2) because the guaranty agreement would be barred by the statute of frauds in section 9-505(2). This Court stated:

> The case was tried upon the theory that the defendants were not liable; that if any promise were made by the defendants, such promise was collateral and must be in writing. That being the theory upon which the case was presented by the appellants, it was error for the court to refuse to instruct the jury to the effect that if they should find from the evidence that any credit was in fact given to Trainor

11

or the Irrigation Co., or that they, or either of them, were in any degree liable for the indebtedness, the defendants could not be charged as original contractors, but at most as mere guarantors and under the provisions of sec. 6009, Rev. Codes, they were not liable unless such agreement or note or memorandum thereof was in writing and subscribed by the party charged or by his agent.

*Id*. at 174-75, 113 P. at 81.

As this Court held in *Storer*, if under the alleged agreement the creditor contended that the original debtors were still liable, then the defendants could not have become the principal debtors, which was necessary for section 9-506(2) to apply. They could only have been guarantors. A person cannot be both the principal debtor and the guarantor of the same transaction. If a guaranty agreement could also be an agreement within the provisions of Idaho Code section 9-506(2), then there would have been no reason to vacate the jury verdict for the failure to instruct them regarding guaranty agreements.

Because the complaint in the instant case only alleged a guaranty, it did not allege a claim under Idaho Code section 9-506(2). " '[T]he only issues considered on summary judgment are those raised by the pleadings.' A cause of action not raised in the pleadings may not be raised on appeal, even if the trial court considered the issue." *Nelson v. Big Lost River Irrigation Dist*., 148 Idaho 157, 160, 219 P.3d 804, 807 (2009) (quoting *Vanvooren v. Astin*, 141 Idaho 440, 444, 111 P.3d 125, 129 (2005)) (citation omitted); *Nava v. Rivas-Del Toro*, 151 Idaho 853, 860-61, 264 P.3d 960, 967-68 (2011); *accord O'Guin v. Bingham Cnty*., 139 Idaho 9, 15, 72 P.3d 849, 855 (2003).

If a plaintiff facing a motion for summary judgment decides it has alleged the wrong claim for relief or wants to raise another claim, the plaintiff must amend its complaint. *O'Guin*, 139 Idaho at 15, 72 P.3d at 855. Because Mickelsen Construction did not do so in this case, its argument that Ms. Horrocks was not a guarantor but instead was a principal debtor cannot be considered on appeal.


### III.
### Did the District Court Err in Failing to Grant a Judgment to Mickelsen Construction as the Holder of a Negotiable Instrument?

Mickelsen Construction argues on appeal that "[t]he trial court erred in dismissing Mickelsen Construction's Complaint because it is still entitled to enforce the negotiable

instrument (the Check) against Horrocks/Sunshine Secretarial." In response, the Defendants state, "For the very first time on appeal, Mickelsen attempts to argue new theories of liability in support of the proposition that the check here is enforceable regardless of whether it is sufficient as an original obligation or as a guaranty." In its reply brief, Mickelsen Construction admits that recovery under the theory of a negotiable instrument "was not the issue below and was not addressed by the trial court." A review of the record on appeal confirms that Mickelsen Construction did not raise this issue below. "This Court will not consider issues raised for the first time on appeal." *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 812, 252 P.3d 71, 93 (2011). Accordingly, we will not address this issue.

## IV.
### Is Either Party Entitled to an Award of Attorney Fees on Appeal?

Mickelsen Construction seeks an award of attorney fees on appeal pursuant to Idaho Code section 12-120(3) on the grounds that this was an action to recover on a negotiable instrument, guaranty, or commercial transaction. Because it is not the prevailing party on appeal, it is not entitled to an award of attorney fees under that statute. *Storey Constr., Inc. v. Hanks*, 148 Idaho 401, 411, 224 P.3d 468, 478 (2009).

Defendants also seek an award of attorney fees on appeal pursuant to section 12-120(3) on the grounds that this is an action to recover on a guaranty or a commercial transaction. Because this was an action to recover on a guaranty, we award the Defendants attorney fees on appeal.

## V.
### Conclusion.

We affirm the judgment of the district court, and we award respondents costs on appeal, including a reasonable attorney fee.

Chief Justice BURDICK, Justices W. JONES, and HORTON **CONCUR.**

J. JONES, Justice, dissenting.

13

I dissent from the Court's opinion for two reasons: In my estimation the check made payable by the Respondents to Mickelsen Construction (Mickelsen) is a sufficient writing to satisfy I.C. § 9-505, and, as the district court appears to have concluded, the Complaint was adequate to invoke the provisions of I.C. § 9-506. I have a concern that the practicing bar may interpret our holding as stepping back to a degree from our previous decisions on notice pleading. And, while I strongly believe that I.R.C.P. 56 is a valuable tool for weeding out non-meritorious cases, it appears to me that there are enough unanswered questions in this case to allow it to be decided at a trial upon the merits. There was sufficient evidence in the record for Mickelsen to successfully resist summary judgment. Before proceeding with the merits, it is appropriate to first consider the allegations of the Complaint.

## THE COMPLAINT

The conclusions reached in the Court's opinion are based on an overly-strict reading of the Complaint—the word "guarantee" in the Complaint is deemed by the Court to be a term of art; because of the use of this term of art, the Complaint alleges only one theory, the theory of enforcing a guaranty; because the Complaint states a guaranty theory, any writing sufficient to comply with I.C. § 9-505(2) must also contain each and every element necessary for an enforceable guaranty; and because the Complaint alleges a single specific theory, it can't be read broadly enough to encompass any other claim, including a claim within I.C. § 9-506. Such a strict, technical reading of the Complaint is not required under the rules or previous decisions of this Court.

Mickelsen's Complaint must be considered under Idaho's liberal notice pleading standard in order to determine the claims encompassed therein, rather than under a rigid, technical reading. "The Idaho Rules of Civil Procedure set forth a system of notice pleading intended to free litigants from what were once rigid pleading requirements." *Carrillo v. Boise Tire Co., Inc.*, 152 Idaho 741, 751, 274 P.3d 1256, 1266 (2012). Therefore, we have frequently held that, "[c]ourts should make every intendment to sustain a complaint that contains a concise statement of the facts constituting the cause of action and a demand for relief." *Id.* at 752, 274 P.3d at 1267. "A party's pleadings should be liberally construed to secure a just, speedy and inexpensive resolution of the case." *Youngblood v. Higbee*, 145 Idaho 665, 668, 182 P.3d 1199, 1202 (2008). Therefore, "[u]nder notice pleading, a party is no longer slavishly bound to stating particular theories in its pleadings. . . . the general policy behind the current rules of civil procedure is to

14

provide every litigant his or her day in court." *Brown v. City of Pocatello*, 148 Idaho 802, 807, 229 P.3d 1164, 1169 (2010) (internal quotations and citations omitted). "Our liberal notice pleading standard is intended to see justice done, and prevent the dismissal of a valid claim for a mere technical failing." *Id.* at 809, 229 P.3d at 1171. Thus, even if a count of a complaint does not state a specific factual theory of recovery, "[n]otice pleading frees the parties from pleading particular issues or theories, and allows parties to get through the courthouse door merely by stating claims upon which relief can be granted." *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 444, 235 P.3d 387, 394 (2010).

The Court correctly notes that Mickelsen used the word "guarantee" twice in the Complaint, but incorrectly determines this to be a term of art, limiting Mickelsen's theory of recovery. The words "guaranty" and "guarantee" are often used interchangeably by lawyers and courts. However, getting into technicalities, both spellings generally merit a separate definition in dictionaries and are generally defined in a slightly different fashion. Generally, "guarantee" is defined more broadly and to include "guaranty," while "guaranty" is defined more narrowly and not to include "guarantee." For example, WEBSTER'S defines "guarantee" as: "**1** GUARANTY **2** a pledge or assurance; specif., **a**) a pledge that something is as represented and will be replaced if it does not meet specifications **b**) a positive assurance that something will be done in the manner specified **3** a guarantor **4** a person who receives a guaranty **5** a sign or portent." WEBSTER'S NEW WORLD DICTIONARY 598 (3rd College Ed. 1988). On the other hand "guaranty" is defined as: "**1** a pledge by which a person commits himself to the payment of another's debt or the fulfillment of another's obligation in the event of default **2** an agreement that secures the existence or maintenance of something **3** something given or held as security **4** a guarantor." *Id.* Our decisions have often intermixed the two words but, as a general matter, guaranty is used more as a term of art to connote a guaranty agreement, where one promises to pay the indebtedness of another upon the other's default, while guarantee is often given a broader reading—guarantee of rights, guarantee of employment, guarantee of payment, guarantee of intentions, and the like.[6] Of interest here is the fact that Mickelsen consistently employs "guarantee" in its Complaint and written arguments, while the Court consistently employs the

---

[6] A Westlaw word search indicates that guarantee has been used substantially more often than guaranty by Idaho's appellate courts. From November 2012 to the present, appellate decisions used guarantee in 42 cases, while guaranty was used in only 8.

narrower term, "guaranty," in its opinion. At the summary judgment stage of a case, technicalities should be decided in favor of the defending party. It is fair to infer that Mickelsen was using guarantee in its broader sense, rather that the narrow, term-of-art, technical sense.

Moreover, in the two instances where Mickelsen employs the word "guarantee" in the Complaint, it is used as a verb. In the critical instances where "guaranty" appears in the Court's opinion, it is employed as a noun. The above descriptions for both words are for the noun meanings. Webster's states as follows, where guarantee is used as a verb: "**1** to give a guarantee or guaranty for *[*to *guarantee* a product*]* **2** to state with confidence; promise *[*to guarantee that a thing will be done*]*." *Id.* With these varying definitions, it does not seem appropriate to consider "guarantee," as used by Mickelsen, to be a term of art.

Given our liberal pleading standard, the fact that litigants need not allege specific theories, and the fact that Mickelsen used the more broadly defined guarantee rather than the more narrowly defined guaranty, it seems counter to this Court's practices to so strictly read and limit the Complaint. Further, the Complaint alleges facts that are inconsistent with the strict reading limiting it to a guaranty theory. The Complaint states that Horrocks agreed to guarantee Accelerated's credit card payment and, in order to do so, wrote a check in the amount of $34,980. But, then the Complaint alleges that, "The check written by Lesa D. Horrocks on the account of Sunshine Secretarial Services, Inc. and Lesa D. Horrocks bounced and despite numerous demands the checking account on which the check was written never had sufficient funds for the check." The Complaint then incorporates a copy of the check and two notices from the credit union on which the checks were drawn saying the account contained insufficient funds—one dated January 26, 2009, and the other on January 27, 2009. On its face, the check is an unconditional order to pay the sum of $34,980 to Mickelsen. *See* I.C. § 28-3-104(1) and 106(1). An immediately negotiable check, bearing the date of the agreement, is inconsistent with a guaranty theory. Liability on a guaranty only matures when the principal obligor fails to perform. The Complaint makes no mention of Accelerated's remaining obligation, if any, for the indebtedness. Nor does the Complaint allege that Respondents' liability matured because of anyone's default. The Complaint merely notes that the check bounced twice for insufficient funds but does not make mention of Accelerated's nonperformance. Again, this is inconsistent with a guaranty theory. It would be an odd guaranty where the guarantor produced immediate payment.

16

Although Mickelsen used the word "guarantee" in briefing both before the district court and this Court, the opening statement in its memorandum submitted in opposition to Respondents' motion for summary judgment summarized its opposition to the summary judgment without the use of that word. Mickelsen argued:

> Accelerated Paving, Inc. was indebted to Mickelson for materials supplied on a project. When Mickelson Construction threatened to lien the job, Accelerated Paving offered to pay with a credit card. Mickelson Construction would only accept a credit card if a third party gave a check to cover what was owed. Lesa Horrocks wrote a check on an account bearing the name Lesa Horrocks/Sunshine Secretarial Services believing that American Express had approved the transaction and would fund the credit card transaction to her account. The check is a sufficient writing to satisfy the statute or frauds. However, if it is not then this is an original obligation of Horrocks/Sunshine Secretarial which does not need to comply with the Statute of Frauds.

It is clear that Mickelsen was urging alternate readings of its Complaint—either Respondents had made a promise to pay Accelerated's debt with the check, or they had assumed primary responsibility for the debt. In either event, the check was to be Mickelsen's source of payment. While the Respondents contended in their motion for summary judgment and supporting affidavit that neither of them had intended to guarantee Accelerated's indebtedness, they did not argue whether or not there was a valid guaranty agreement. The focus of their motion was on whether or not the check satisfied the writing requirements of I.C. § 9-505. They stated that the check was intended by the Respondents to pay Mickelsen for Accelerated's indebtedness. According to the Respondents, the check was to be Mickelsen's payment for the debt, but only after the credit card transaction was approved. Nothing on the check so indicates, however. In their reply brief in district court, Respondents state, "Sunshine, acting as a facilitator, relying upon American Express to cover the check, ran the transaction and wrote a check with Mickelsen with the express understanding that American Express would immediately compensate Sunshine for the transaction."

## RESPONDENTS' CHECK SATISFIES I.C. § 9-505

There is no dispute in this case that Respondents' check was signed on January 8, 2009, made payable to Mickelsen in the amount of $34,980, and delivered to Mickelsen on that same date. There is no contention that the check was not immediately negotiable. There can be no contention that the check contains any language indicating that negotiability is based on any

17

condition or subject to any sort of limitation. Horrocks did not follow a suggestion by Mickelsen to postdate the check.[7] The parties only dispute the purport or nature of any oral understandings regarding negotiability.

Being a promise to answer for the debt of another, the check was required to comply with I.C. § 9-505. That statute provides that, "[a] special promise to answer for the debt . . . of another, except in the cases provided for in section 9-506, Idaho Code . . . is invalid, unless the same or some note or memorandum thereof, be in writing and subscribed by the party charged." I.C. § 9-505(2). There is no language in the statute that limits its application to a guaranty. Indeed, neither guaranty nor guarantee appear anywhere in the statute. A guaranty is certainly within the statute but, just because an agreement is within the statute, does not automatically make it a guaranty. The statute does not require that a writing, wherein one promises to answer for another's debt, contain all of the elements required for a guaranty. In other words, a guaranty is one type of promise encompassed within I.C. § 9-505(2), but other types of promises are also encompassed within the statute.

In its opinion, the Court concludes, in essence, that because Mickelsen employed the word "guarantee" in its Complaint and in some of its written briefing, the written agreement or memorandum was required to contain each and every element of a guaranty agreement in order to comply with the statute.

I disagree. In my estimation, the use of "guarantee" in the Complaint did not limit Mickelsen to a guaranty theory, requiring that the writing or memorandum contain all the elements required for a guaranty agreement. Reading the Complaint broadly and drawing all reasonable inferences in favor of Mickelsen, the Complaint can easily be read as alleging a special promise to answer for the debt of another, without alleging the promise constituted a formal guaranty agreement.[8]

---

[7] In his affidavit opposing summary judgment, Mr. Mickelsen asserted that the check was to be held by him until the credit card transaction was concluded and then to be returned to Horrocks. However, both parties argued to the district court during the summary judgment hearing that the check was to constitute payment of the Accelerated debt. They disputed the terms of any oral understanding as to when and under what conditions the check was to be negotiated.

[8] In its decision, the district court appears to have taken this approach. As previously noted, the court indicated that conflicting facts in the record precluded issuing a summary judgment against Mickelsen on a guaranty theory, but then the district court went on to consider whether the check met the requirements of I.C. § 9-505(2). It is apparent the court concluded that an agreement to

18

The check is a pre-printed form containing the names of both Respondents, made payable to Mickelsen, in the amount of $34,980, and signed by Horrocks. The check indicates it is for "Accel." On its face, it is unconditionally and immediately negotiable. It does not indicate that any other party must default or nonperform before it can be cashed. While the record indicates that the parties discussed various conditions that might bear upon the negotiability of the check, none of those conditions are stated on its face. I believe this writing adequately states the required elements of a special promise to answer for the debt of another. The check could have been submitted for collection that very day and, had there been sufficient funds in the account, Accelerated's debt would have been paid. No other writing was required in order to accomplish that end.

Indeed, even if the check was also required to contain all elements of a guaranty, I can't imagine what more would be needed. Again, it is not contested that the check was intended to constitute payment to Mickelsen for the Accelerated debt. The only question is what the parties orally agreed as far as to when or under what conditions that would occur. If the parties had wished to limit or condition negotiability, they could have done so by placing some appropriate language on the face of the check. Indeed, the check was written by Horrocks, who had exclusive control over the language that went into it. Generally, we construe the language of the instrument against the drafter. However, Respondents essentially ask the Court to construe it against the person in whose favor the instrument was drafted and to whom it was delivered. Their invitation should be declined. Certainly, the record shows sufficient compliance with I.C. § 9-505(2) to survive summary judgment.

## THE COMPLAINT WAS ADEQUATE TO INVOKE I.C. § 9-506

The district court granted summary judgment against Mickelsen primarily on the basis of I.C. § 9-506(2). Its route to that destination is interesting. At the commencement of the hearing on Respondents' motion for summary judgment, the district judge commented:

> I've read all of the briefs. I've read the affidavits. . . . First of all, if the question were whether or not an issue of fact exists or whether or not Ms. Horrocks made a guarantee, then the motion would be denied instantaneously. There clearly is from the question – from the affidavits and construing the facts in the favor of the nonmoving party which is the plaintiff in this case, there clearly is a question of

pay the debt of another does not have to be a formal guaranty agreement in order to fall within the coverage of I.C. § 9-505(2).

19

fact as to whether or not Ms. Horrocks had guaranteed this particular debt. But I don't think that's the issue, and so I – I'm just telling you that right up front.

Then, in its written decision following the hearing, the court observed:

The various affidavits, particularly of [Mickelsen] and [Respondents], create a genuine issue of material fact as to whether [Respondents] guaranteed the Accelerated debt. If that was the only issue upon which the summary judgment motion was based, the motion would be denied. But, as noted above, that is not the primary issue raised by the motion. For purposes of this opinion, the Court accepts as true that Horrocks agreed to guarantee the Accelerated debt.

The district court then proceeded to consider whether the agreement was exempt from the writing requirement of I.C. § 9-505(2), based on I.C. § 9-506, particularly subsections (1), (2), and (3). Mickelsen had asserted, both in its written briefing opposing summary judgment and in oral argument before the district court, that those subsections of I.C. §9-506 applied. Even without that, the district court could have made the connection because I.C. § 9-505(2) specifically excepts from its coverage cases "provided for in section 9-506, Idaho Code." I.C. § 9-505(2). In any event, the majority of the argument and colloquy at the summary judgment hearing was devoted to the I.C. § 9-506 issue. The issue of whether the check complied with I.C. § 9-505(2) was discussed secondarily, while there was practically no discussion as to whether or not there was either a guarantee or a guaranty.

The district court erroneously concluded that I.C. § 9-506 required "beneficial consideration" to flow to the Respondents in exchange for any promise to pay Mickelsen, that there was a failure to show any such consideration, and that therefore Mickelsen could not rely on section 9-506. The district court primarily based its holding *Reed v. Samuels*, 43 Idaho 55, 249 P. 893 (1926). In its opinion, this Court correctly analyzes *Reed* and overrules it and its progeny to the extent they hold that the phrase "the creditor parts with value" requires that the value inure to the benefit of the party making the promise. I agree with that part of the opinion.

However, I disagree that the Complaint was not sufficient to allege a claim within I.C. § 9-506.[9] In this regard, I am in agreement with the district court, which appeared to believe that

---

[9] We said in *Brown* that, "a complaint need not identify the statutory basis for relief nor include a formal statement of the cause of action being pursued," so long as there is some indication of the theory of recovery supporting the relief sought. 148 Idaho at 808, 229 P.3d at 1170. The relief sought here was recovery of the amount of Accelerated's obligation. The relief sought was not dependent on whether the agreement was oral or written.

the Complaint did allege such a claim and proceeded to grant summary judgment based on that statute.

The district court read the Complaint as seeking to recover on a promise to answer for the debt of another, aside from the question of whether the promise constituted a formal guaranty, and the Respondents seem to have read the Complaint in the same fashion. In their memorandum supporting summary judgment, the Respondents focus solely on the question of whether the check satisfied the requirements of I.C. § 9-505(2), not on whether there was an enforceable guaranty contract. "The key issue in determining the validity of a complaint is whether the adverse party is put on notice of the claims brought against it." *Gibson v. Ada Cnty. Sheriff's Dept.*, 139 Idaho 5, 9, 72 P.3d 845, 849 (2003). Respondents appear to have known Mickelsen was pursuing a claim for recovery on a promise to answer for the debt of another, whether or not it constituted a formal guaranty agreement. At the summary judgment hearing, when the district court observed that the crux of the Complaint was an action to recover on an original obligation under I.C. § 9-506(2), neither party objected. Respondents contended it was not such an agreement, while Mickelsen contended it was. The important point is that both parties had an opportunity to present their positions on the issue and neither objected to the district court's determination that the Complaint stated a claim within I.C. § 9-506(2).

Drawing all inferences in favor of Mickelsen, the Complaint is perfectly adequate to assert a claim to recover on a promise to answer for the indebtedness of another, which would be within I.C. § 9-505, or, alternately, a claim to hold Respondents liable as the principal debtor within I.C. § 9-506(2). *Storer v. Heitfeld*, 19 Idaho 170, 113 P. 80 (1910) does not dictate otherwise. First, the *Storer* case was decided during the dark old days of code pleading, where a party could be bounced out of court for the slightest misstep or wording error. This Court has long since adopted the notice pleading standard, which does not require laser precision in wording a complaint and which allows demands for relief in the alternative. I.R.C.P. 8(a)(1). Second, the Court's application of *Storer* is based on a faulty premise—that "the complaint in the instant case only alleged a guaranty, it did not allege a claim under Idaho Code section 9-506(2)." Third, although a party probably cannot be both a guarantor and the principal debtor at the same time, Mickelsen's position at the summary judgment stage, based on alternate readings of the allegations of the Complaint was that Respondents may have been one or the other but not both.

21

## CONCLUSION

While this not a particularly important case, even a case of modest legal significance can produce an unfortunate precedent. In my estimation, this decision, with its narrow, technical reading of the Complaint, takes a step back from Idaho's liberal notice pleading standard. By determining the outcome based on a single non-technical word in the Complaint and overlooking the significance of allegations and incorporated documents that are inconsistent with that word, we take a slight step back to the old code pleading days.

Furthermore, the case reaches this Court in a somewhat unusual process and leaves a number of questions unanswered. The district court determined that conflicting evidentiary inferences as to whether or not there was a guaranty agreement precluded summary judgment to the Respondents on that issue (even though they had not particularly sought summary judgment on that issue—they sought summary judgment on the ground that the check did not satisfy I.C. § 9-505(2)). Rather, the district court decided the summary judgment, incorrectly, on another issue not presented by the Respondents in their moving papers—I.C. § 9-506(2). The district court obviously considered the Complaint to adequately assert a claim encompassed within that code section. This Court disagreed in its opinion. I believe the district court was correct in that respect.

Although Mickelsen did not specifically invoke an estoppel doctrine, the Complaint could certainly be read in that regard.[10] In essence, Mickelsen appears to be saying that he had lien rights that would have secured payment of the indebtedness owing by Accelerated, that Accelerated and Respondents caused Mickelsen to relinquish those lien rights based on Respondents' assurances, and that Mickelsen was thereby prejudiced. What would be worth exploring at trial is what could have prompted Respondents to issue an immediately negotiable check, if all they intended to do was to facilitate a transaction as they claimed. Sunshine was Accelerated's landlord and a provider of other services, but it is not entirely clear why it or Horrocks would have subjected themselves to this potential liability, if they were just being helpful. Did Mickelsen forego its lien rights based on affirmative representations by Respondents that the credit card had been cleared? The inference in the Complaint is that it did. And, it is not

---

[10] In *Brown*, we said, "Although never mentioning promissory estoppel by name, the short and plain statement succinctly offered allegations that, if true, could meet the elements of a claim for promissory estoppel." 148 Idaho at 808, 229 P.3d at 1170. Presumably, the same would apply with regard to equitable estoppel.

22

clear whether Mickelsen did, in fact, forego its lien rights. The transaction took place on January 8, 2009, and it was apparently clear by January 26, 2009, when Mickelsen first sought to negotiate the check, that things had gone awry. One wonders exactly when the lien rights expired. And, what actually was the oral agreement between or among the parties in the event the credit card charge was not honored by American Express, as Horrocks thought it had been. Was the check to be returned or cashed? It is obvious the parties had differing opinions after American Express declined payment. In one instance Respondents assert that the check was not to be cashed until American Express deposited the money but in other instances they state that it was understood American Express would "compensate Sunshine for the transaction," and that Sunshine wrote the check "relying to its detriment, on American Express and Accelerated." These are questions that can best be answered at trial.

For the foregoing reasons, I believe that summary judgment was inappropriately granted by the district court and that the grounds upon which this Court upholds it are insufficient. I would vacate the summary judgment and remand for further proceedings.